Larkin D. **WATSON**, IV, Plaintiff,

v.

**DEACONESS WALTHAM HOSPITAL,**
CareGroup, Inc., and Liberty Life As-
surance Company of Boston, Defen-
dants.

No. CIV.A. 00–10583–WGY.

United States District Court,
D. Massachusetts.

April 10, 2001.

Robert LeRoux Hernandez, Law Offices of Robert L. Hernandez, Malden, MA, for Larkin D. Watson, IV, Plaintiff.

Philip M. Cronin, Joseph K. Scully, Peabody & Arnold LLP, Boston, MA, Christine M. Roach, Roach & Carpenter, P.C., Boston, MA, for Deaconess Waltham Hospital, CareGroup, Inc., Defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. Introduction

### A. Summary of Amended Complaint

The plaintiff, Larkin D. Watson, IV ("Watson"), has brought this action against his former employer, Deaconess Waltham Hospital ("Deaconess"), pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.[1]

---

1. Watson has joined CareGroup, Inc. ("CareGroup"), the sponsor and administrator of Deaconess's Employee Welfare Plan (the "Plan"), and Liberty Life Assurance Company

Watson seeks restitution for breach of fiduciary duty under ERISA § 404(a), 29 U.S.C. § 1104(a).[2] Am. Compl. ¶ 1.

### B. Procedural Posture and Relevant Legal Standard

On February 9, 2001, Deaconess moved for summary judgment on Watson's claims under Federal Rule of Civil Procedure 56, and on February 22, 2001, Watson filed a cross-motion for summary judgment. At the motion hearing held on March 12, 2001, the parties agreed that the issues would be submitted for decision by this Court as a case stated. *Cont'l Grain Co. v. P.R. Mar. Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992) (observing that the submission of a matter to the court as a case stated promotes judicial efficiency); *Boston Five Cents Sav. Bank v. Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 12 (1st Cir.1985) (Breyer, J.) (same). This Court must review the record, draw such inferences as are reasonable, decide any significant issues of material fact, and, applying the governing law, enter such judgment as may be appropriate. *Cont'l Grain Co.*, 972 F.2d at 429 n. 7; *Boston Five Cents Sav. Bank*, 768 F.2d at 11–12.

## II. Factual Background

The facts in this case consist of (i) Deaconess's Statement of Material Facts of Record as to Which There Is No Genuine Issue to be Tried ("Def.'s Stmt.") and Watson's response thereto ("Pl.'s Resp. to Def.'s Stmt."); (ii) an affidavit by Watson ("Watson Aff."); (iii) Watson's deposition ("Watson Dep."); (iv) an affidavit by Fred E. Sussman ("Sussman"), Deaconess's Director of Human Resources ("Sussman Aff."); (v) Sussman's deposition, taken pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Sussman Dep."); and (vi) written documents that speak for themselves. The following recitation of facts draws from these sources.

### A. The Parties and the Employee Benefit Plans

On October 5, 1992, Watson was hired to work part-time by Waltham–Weston Hospital ("Weston") as an addictions management counselor. Sussman Aff. ¶ 6. At that time, Weston provided eligible employees with long-term disability insurance through Confederation Life Insurance Company ("Confederation"). *Id.* ¶ 9. On November 1, 1994, Weston replaced the Confederation group disability plan with a plan provided by Northwestern Mutual Life Insurance Company ("Northwestern"). *Id.* ¶ 12. This plan remained in effect until January 1, 1996. *Id.*

On February 1, 1995, Weston became Deaconess Waltham Hospital, a subsidiary of Pathway Health Network. Watson Aff. ¶ 8; Pl.'s Resp. to Def.'s Stmt. at 3, ¶ 1. A new parent company, CareGroup, was formed on October 1, 1996. Pl.'s Resp. to Def.'s Stmt. at 3, ¶ 1.

From January 1, 1996 to the present, Deaconess has obtained its group benefits plan from Liberty. Sussman Aff. ¶ 15. Under the Plan, Deaconess is the employer, *id.*, and CareGroup is the named sponsor and administrator, *id.* ¶ 15 & Ex. 5.

---

of Boston ("Liberty"), the carrier for long-term disability benefits under the Plan, as codefendants. This Memorandum and Order does not address the disposition of Watson's claims against CareGroup and Liberty.

**2.** Following oral argument on March 12, 2001, this Court granted summary judgment for Deaconess on Watson's claims under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), and ERISA § 510, 29 U.S.C. § 1140. Thus, the sole remaining issue for consideration is Watson's breach of fiduciary duty claim under ERISA § 404(a).

## B. Timeline of Events

During his orientation by Weston's Human Resources Department on October 5, 1992, Watson received and signed a list that identified the benefits available to part-time employees. Watson Aff. ¶¶ 3–4; Sussman Aff. ¶ 8 & Ex. 2. Although Weston offered long-term disability insurance through a group insurance plan with Confederation, Sussman Aff. ¶ 9, Watson was barred from enrolling because the plan required that an employee work at least thirty-six hours per week to be eligible, *id.*

On November 5, 1993, Watson changed to full-time employment. *Id.* ¶ 10. Although Watson met with employees in Weston's Human Resources Department to discuss benefits available under his new full-time position and to submit applications for health and dental insurance, he was never told that his full-time employment qualified him for disability benefits. Watson Aff. ¶¶ 6–7.

For health reasons, on March 17, 1996, Watson changed to part-time employment at the suggestion of his supervisor. Watson Aff. ¶ 9; Sussman Aff. ¶ 14. Watson was not informed that this change in his employment status might affect his eligibility for benefits under the hospital's long and short-term disability benefits policy. Watson Aff. ¶ 9.

At his own request, Watson changed his status from part-time to full-time employment on March 29, 1999. *Id.* ¶¶ 10, 15; Watson Dep. at 135–36; Sussman Aff. ¶ 22. At that time, he was advised that as a full-time employee, he was eligible for long-term disability insurance under the Liberty Plan. Sussman Aff. ¶ 22. He was also told that Liberty would waive the six-month eligibility waiting period, but not the preexisting condition exclusion. Watson Dep. at 119–20; Sussman Aff. ¶ 22.

On April 28, 1999, Watson's physician advised Deaconess that because of his angina, Watson would not be able to return to work. Watson Aff. ¶ 16; Watson Dep. at 136; Def.'s Stmt. ¶ 22. Having become totally disabled, Watson filed a claim for long-term disability benefits with Liberty on July 28, 1999, which was denied on November 19, 1999, because Watson had not been a full-time employee for a sufficient time period. Watson Aff. ¶¶ 17, 19; Sussman Aff. ¶¶ 25–26. On or about March 6, 2000, Liberty sustained its earlier denial of Watson's claim because his condition was preexisting. Watson Aff. ¶ 21; Sussman Aff. ¶ 28. Watson asserts that his claim would not have been denied if Deaconess had "properly informed [him] of his rights and benefits before Deaconess induced him to become a part-time employee," Am. Compl. ¶ 16, and that Liberty's denial of coverage is "directly attributable to the acts and omissions of Deaconess and . . . amounts to a breach of Deaconess's fiduciary duties to [Watson] under ERISA," *id.* ¶ 17.

## III. Discussion

### A. Background

ERISA § 404(a) establishes that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the

conduct of an enterprise of a like character and with like aims. *Id.* Watson asserts three factual bases for recovery for breach of fiduciary duty under section 404(a): (1) Deaconess, through its predecessor Weston, failed to provide information on long and short-term disability insurance when Watson was hired, Am. Compl. ¶¶ 7–8; (2) Deaconess, through its predecessor Weston, failed to provide benefits materials to Watson and to inform him about his eligibility for long and short-term disability benefits when he became a full-time employee on November 5, 1993, *id.* ¶ 9; and (3) Deaconess induced Watson to accept part-time employment, but failed to provide notice of the existence of a long-term disability benefits policy, or of the fact that accepting part-time work would make Watson ineligible for benefits under that policy, *id.* ¶ 11. This Court can quickly dispose of two of these claims.

■ Watson's first claim fails because the Court holds, as matter of law, that Weston fulfilled its obligations under ERISA by informing Watson, during his employment orientation on October 5, 1992 or shortly thereafter, of the benefits available to him as a part-time employee. *See* Watson Aff. ¶¶ 3–4 & Ex. A; Sussman Aff. Ex. 2. Weston did not have an obligation to inform Watson about long-term disability benefits that were available only to full-time employees. Moreover, although Watson states that he did not know that long-term disability benefits existed, Watson Dep. at 42–43, the Court finds that Watson was in fact told that "LTD insurance" was not applicable to him as a part-time employee. Sussman Aff. ¶ 8 & Ex. 2.

■ Watson's second claim also fails. To recover from Deaconess for Weston's alleged breach of fiduciary duty, first Watson would have to demonstrate that Weston, the named sponsor and administrator of the Confederation Plan, was also a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Second, Watson would have to overcome the clear language of ERISA § 409(b), 29 U.S.C. 1109(b), which states that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty ... if such breach was committed before he became a fiduciary," and show that Weston's liability can be imputed to Deaconess, *id.*

Assuming, *arguendo,* that Watson could surmount these hurdles, he still would be unable to prove that Weston's alleged failure to inform him about the availability of long-term disability benefits on November 5, 1993 constituted a breach of fiduciary duty under ERISA § 404(a). ERISA contains explicit disclosure requirements that obligate ·plan administrators to furnish participants and beneficiaries covered under a plan with: a summary plan description; an annual statement of a plan's assets, liabilities, receipts, and disbursements; and, upon request, a statement of a participant's or beneficiary's total accrued benefits and total accrued nonforfeitable pension benefits. ERISA §§ 101–105, 29 U.S.C. §§ 1021–1025. Thus, if Weston failed to provide Watson with information respecting his eligibility for participation and benefits during the time period specified by ERISA, then it may have breached its duty to inform under ERISA §§ 101–105, but this failure does not constitute a breach of fiduciary duty under ERISA § 404(a). *Porto v. Armco, Inc.,* 825 F.2d 1274, 1276 (8th Cir.1987) ("The fiduciary duty imposed by ERISA is generally applied to the management of plan assets.... A plan administrator's duty to disclose information to plan participants is another matter, dealt with separately by ERISA."); *Sweeney v. Kroger Co.,* 773 F.Supp. 1266, 1269 (E.D.Mo.1991) (same); *see also LeHigh Valley Hosp. v. Rallis,* Nos. 94–3082, 95–3511, 1996 WL

187560, at *5 n. 2 (E.D.Pa. Apr.12, 1996) ("As a procedural point, it should be noted that an administrator does not breach a fiduciary duty by failing to comply with [ERISA § 104], but rather breache[s] a non-fiduciary duty."), *rev'd on other grounds,* 135 F.3d 765 (3d Cir.1997) (unpublished table decision); *Childers v. Northwest Airlines, Inc.,* 688 F.Supp. 1357, 1361–62 (D.Minn.1988) (distinguishing the explicit disclosure requirements under ERISA §§ 101–105 from a heightened fiduciary responsibility to disclose, and ultimately concluding that there is no duty of disclosure beyond the express requirements of ERISA §§ 101–105). Therefore, a mere failure to comply with ERISA's statutory disclosure requirements will not support a claim of breach of fiduciary duty under ERISA § 404(a).

The following discussion is directed toward Watson's sole surviving claim: that Deaconess induced him to change to part-time status and thereby rendered him ineligible for long-term disability benefits.

### B. Watson's Eligibility to Sue Under ERISA § 404(a)

#### 1. Equitable Relief Sought

■ ERISA § 409(a), 29 U.S.C. § 1109(a), establishes that claims for breach of fiduciary duty under ERISA § 404(a) are for the purpose of making "good to [an employee welfare] plan any losses to the plan resulting from each such breach" and "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary," *id.* Thus, compensatory damages are only available to restore a plan to its uninjured condition; individuals cannot obtain compensatory or punitive damages for breach of fiduciary duty. *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding that fiduciary could not

be held personally liable to plan participant or beneficiary for extracontractual compensatory or punitive damages); *Degnan v. Publicker Indus., Inc.,* 42 F.Supp.2d 113, 122 (D.Mass.1999) (Garrity, J.) ("ERISA precludes relief at law, through money damages."); *see also Law v. Ernst & Young,* 956 F.2d 364, 367 (1st Cir.1992).

■ Even though Watson cannot sue under ERISA § 404(a) for compensatory or punitive damages, the Supreme Court has interpreted ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to permit an individual to sue directly for a breach of fiduciary duty, as long as she seeks equitable relief. *Varity Corp. v. Howe,* 516 U.S. 489, 509–15, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *see also Center v. First Int'l Life Ins. Co.,* No. 94–11596, 1997 WL 136473, at *14 (D.Mass. Mar.13, 1997) (Saris, J.). In *Varity,* the Supreme Court distinguished prior precedent and held that "[t]he words of [ERISA § 502(a)(3) ]—'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this title'— are broad enough to cover individual relief for breach of a fiduciary obligation." *Varity,* 516 U.S. at 510, 116 S.Ct. 1065 (quoting ERISA § 502[a][3] ).

Despite this holding, Deaconess disputes Watson's eligibility to sue for breach of fiduciary duty, alleging that Watson does not seek equitable relief, but rather attempts to transform a damages action into an equitable proceeding. Def.'s Mem. at 6 (citing *Corsini v. United Healthcare Corp.,* 51 F.Supp.2d 103, 106 [D.R.I.1999] ). Deaconess correctly asserts that Watson's use of the word "enjoin" in his prayer for relief cannot transform an action for money damages into an equitable proceeding. *Corsini,* 51 F.Supp.2d at 106 ("The plaintiffs' use of equitable terms such as 'restitution,' 'accounting' and 'injunction' to describe the remedies sought in connection

with [their] claims does not alter the fact that [ERISA § 502(a)(1)(B) ] provides what Congress has determined to be 'adequate relief' for such violations.").

Nevertheless, numerous courts have held that under ERISA § 502(a)(3), the equitable remedy of restitution may, in some instances, include compelling a fiduciary to pay money to the plaintiff. *E.g., Ream v. Frey,* 107 F.3d 147, 152–53 & n. 5 (3d Cir.1997); *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.,* 57 F.3d 1255, 1269 (3d Cir.1995); *Schwartz v. Gregori,* 45 F.3d 1017, 1022–23 (6th Cir.1995); *Howe v. Varity Corp.,* 36 F.3d 746, 756 (8th Cir.1994), *aff'd,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund,* 933 F.Supp. 1124, 1139 (D.Mass.1996) (Saris, J.); *see also Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust,* 134 F.Supp.2d 189, 195-96 (D.Mass.2001) (citing cases).

These courts have awarded restitution in order to prevent unjust enrichment, *Schwartz,* 45 F.3d at 1022, particularly in the context of a breach of fiduciary duty, *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974,* 165 F.3d 209, 213 (3d Cir.1998); *Ream,* 107 F.3d at 152; *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1330–31 (8th Cir.1995); *Jackson,* 933 F.Supp. at 1139. Although the gravamen of Watson's claim against Deaconess is not that Deaconess "holds property which in equity and good conscience belongs to [Watson] and which must be surrendered to avoid unjust enrichment," [3] *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144 (2d Cir.1999), the logic of these courts nevertheless applies. Watson seeks recovery of the benefits to which he allegedly would have been entitled if Deaconess

had not breached its fiduciary duty. Where, "[a]s a result of the fiduciary's misrepresentation or other improper action, the beneficiary failed to receive her benefits as required by the plan or mandated by ERISA," *Laurenzano,* 134 F.Supp.2d at 195-96, the award of those lost benefits is an appropriate remedy, *e.g., Strom,* 202 F.3d at 145–50. To hold otherwise would undermine Congress's intent in drafting ERISA. *Id.* (noting that ERISA was enacted to create an improved remedial scheme for the benefit of plan participants and beneficiaries).

The legislative history of ERISA, when viewed in light of the parallel history of the National Labor Relations Act, 29 U.S.C. § 1 *et seq.,* and Title VII of the Civil Rights Act of 1964, now codified at 42 U.S.C. § 2000e *et seq.,* reveals that Congress's use of the phrase "equitable relief" in ERISA was intended to include relief such as that sought by Watson. *Strom,* 202 F.3d at 145–50; *Laurenzano,* 134 F.Supp.2d at 196-97 (discussing *Strom* ). As this Court stated in *Laurenzano,* in cases such as this one, the only way to eliminate the direct economic harm suffered by the plaintiff and to make the plaintiff whole is through money. *Laurenzano,* 134 F.Supp.2d at 196-97 ("In cases alleging money owed under ERISA, only money can 'redress' the harm alleged; to hold that ERISA mandates certain benefits, but then deny receipt of those benefits, strips the right of its remedy, in direct contravention of the words of the statute and the intent of Congress . . . ."); *cf. Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–21, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (discussing Congress's intent, under Title VII, to make persons whole for injuries suffered on account of unlawful em-

---

**3.** Watson never paid any premiums for long-term disability benefits, and even if such premiums had been paid, it would have been the insurer, Liberty, not the employer, Deaconess, that would have been unjustly enriched by them.

ployment discrimination). Thus, if Watson establishes liability on the part of Deaconess, then he is entitled to relief in the form of the long-term disability benefits that he would have received but for Deaconess's alleged violation of its fiduciary duty to him.

### 2. No Other Adequate Relief Available

Equitable relief under ERISA § 502(a)(3) can only be obtained against a plan fiduciary in circumstances in which Congress did not "elsewhere provide[ ] adequate relief for a beneficiary's injury." *Varity*, 516 U.S. at 515, 116 S.Ct. 1065; *see also Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir.1997). Thus, the language of ERISA § 502(a)(3) creates a "catch-all" or "safety net" that provides appropriate equitable relief to plaintiffs who cannot rely on ERISA's other enumerated causes of action. *Laurenzano*, 134 F.Supp.2d at 194 (citing *Varity*, 516 U.S. at 512, 515, 116 S.Ct. 1065). Deaconess argues that if Watson can state a claim under another section of ERISA, such as section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," *id.*, then he cannot bring a cause of action under ERISA § 502(a)(3) for equitable relief. Def.'s Mem. at 6.

This argument fails, however. In *Varity*, the Supreme Court held that relief was available under ERISA § 502(a)(3) to the plaintiffs—employees allegedly tricked by their plan administrator and employer into withdrawing from their plan—because, as non-participants, they could not sue under ERISA § 502(a)(1)(B). *Varity*, 516 U.S. at 515, 116 S.Ct. 1065. Watson alleges that Deaconess induced him to accept part-time employment, thus making him ineligible for long-term disability benefits under the Plan. Thus, like the plaintiffs in *Varity*, Watson is not a member of the Plan and has no "benefits due to him under the terms of his plan." ERISA § 502(a)(1)(B). Relief is therefore unavailable to Watson under ERISA § 502(a)(1)(B), and he can bring his claims under ERISA § 502(a)(3). *Varity*, 516 U.S. at 515, 116 S.Ct. 1065 ("[The plaintiffs] must rely on the *third* subsection or they have no remedy at all."). This holding comports with this Court's statement in *Laurenzano*: "*Varity* does not force a plaintiff to elect his remedy before filing a complaint, but rather prohibits a plaintiff from receiving equitable relief under ERISA § 502(a)(3) *in addition to* some other form of relief." *Laurenzano*, 134 F.Supp.2d at 194 (emphasis added). Because Watson's sole remaining claims are brought under ERISA § 502(a)(3), he is entitled to pursue equitable relief under that section.

### C. Merits of Watson's ERISA § 404(a) Claim

### 1. Deaconess as a Fiduciary Under ERISA § 404(a)

■ In order to recover under ERISA § 404(a) for breach of fiduciary duty, Watson must satisfy the two criteria set forth by the Supreme Court in *Varity*. The first of these essential elements is that Deaconess must have been acting as a fiduciary of the Plan when it engaged in the conduct about which Watson complains. *Degnan*, 42 F.Supp.2d at 119 (citing *Varity*, 516 U.S. at 511, 116 S.Ct. 1065). ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2), reserves fiduciary liability for named fiduciaries, individuals listed in the plan documents or those who are otherwise identified as fiduciaries pursuant to a plan-specified procedure, *id.* Under the terms of the Liberty Plan, Deaconess is

the employer and CareGroup is the Plan sponsor and administrator, Sussman Aff. Ex. 5 at 1, 41, but no fiduciary is expressly named.

Nevertheless, ERISA also extends fiduciary liability to "functional fiduciaries—persons who act as fiduciaries (though not explicitly denominated as such) by performing at least one of several enumerated functions with respect to a plan." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir.1998). According to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A):

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, .... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* Therefore, if Deaconess "exercises discretionary authority in respect to, or meaningful control over, [the Liberty Plan or] its administration," then it qualifies as a functional fiduciary under ERISA § 3(21)(A). *Beddall*, 137 F.3d at 18 (citing *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 [1st Cir.1982] ).

■ Watson adduces two pieces of evidence to support a finding that Deaconess is a functional fiduciary with respect to the Liberty Plan. First, Watson asserts that Deaconess, through its Human Resources Department, retained the responsibility to inform employees of their benefits, to ensure that employees understand whether they are eligible for various benefits, and to inform employees of changes in their status that might increase or decrease their benefits. Pl.'s Opp'n at 7; Sussman Dep. at 9–10. Second, Watson relates that during a telephone conversation with Sussman on August 6, 1999, Sussman stated

that "You should have sent the claim to me instead of Liberty," and that "I act for CareGroup. Giving [the claim] to me is the same as giving it to CareGroup. We handle everything for CareGroup." Watson Aff. ¶ 18.

These facts, either singly or collectively, do not, however, suggest that Deaconess had discretionary authority over the administration of the Liberty Plan sufficient to confer upon it fiduciary status with respect to the Plan. *See Beddall*, 137 F.3d at 20. The established law of the First Circuit is that the mere exercise of physical control over a plan or the performance of ministerial administrative tasks is insufficient to create fiduciary status. *Id.* at 18, 20 (asserting that responsibility for "mechanical administrative responsibilities" does not transform an actor into a fiduciary); *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 21–22 (1st Cir.1996); *O'Toole*, 681 F.2d at 96 ("In the absence of [the discretionary, advisory activities described by the statute], it would be unfair to impose on appellee the responsibilities and liabilities created by the statute for fiduciaries."); *see also Concha v. London*, 62 F.3d 1493, 1502 (9th Cir.1995) (stating that one must perform more than the "usual professional" or "ministerial" functions in order to be considered a fiduciary), *cited with approval in Beddall*, 137 F.3d at 18. The facts presented by Watson suggest nothing more than that Deaconess's Human Resources Department is responsible for routine matters related to the Liberty Plan: it informs employees of their benefits, enrolls them in the Plan, and acts as an intermediary between the employee and the insurer. There is no indication that Deaconess ever assumed a discretionary or advisory role in the administration of the Liberty Plan. Even Sussman's seemingly damning statement, "I act for CareGroup," does not suggest that Dea-

coness, through Sussman, was actively involved in the management of the Plan. Rather, the Court finds that the statement seems to reflect Sussman's role as a facilitator between the employee, CareGroup, and Liberty—the normal function of a Human Resources Department. Moreover, there is no indication that Deaconess has the discretionary authority to determine the eligibility and entitlement of employees to benefits under the Plan or to interpret the Plan itself. These responsibilities lie solely with Liberty. Sussman Aff. Ex. 5 at 33 ("We [Liberty] shall possess the authority, in our sole discretion, to construe the terms of this plan and to determine benefit eligibility hereunder. Our decisions regarding construction of the terms of this plan and benefit eligibility shall be conclusive and binding.").

Because there is no evidence that Deaconess exercised discretionary authority or control over the management or administration of the Liberty Plan, within the meaning of ERISA § 3(21)(A), this Court holds, as matter of law, that Deaconess is not a fiduciary under ERISA § 3(21)(A).

### 2. Deaconess's Alleged Breach

The second essential element of a claim under ERISA § 404(a), established by the Supreme Court in *Varity,* is that the defendant's conduct amounted to a breach of fiduciary duty under the express terms of ERISA, whose exclusive benefit rule commands the fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." *Varity,* 516 U.S. at 506, 116 S.Ct. 1065 (quoting ERISA § 404[a]); *Degnan,* 42 F.Supp.2d at 120. Watson has not produced sufficient evidence to prove that Deaconess was a fiduciary at the time it allegedly induced him to move to part-time status. Therefore, this Court does not reach the question of whether Deaconess's

conduct rose to the level of a breach of fiduciary duty under ERISA § 404(a).

### IV.  Conclusion

For the reasons set forth above, Deaconess's motion for summary judgment [Docket No. 16] is GRANTED and Watson's cross-motion for summary judgment [Docket No. 23] is DENIED.