Christopher SMITH, Plaintiff,

v.

**JEFFERSON PILOT FINANCIAL INSURANCE COMPANY,**
Defendant.

Civil Action No. 07–10228–PBS.

United States District Court,
D. Massachusetts.

April 8, 2009.

Jonathan M. Feigenbaum Phillips & Angley, Boston, MA, J. Scott Kilpatrick, Chisholm Chisholm & Kilpatrick LLP, Providence, RI, for Plaintiff.

Edward S. Rooney, Jr., Eckert Seamans Cherin & Mellott, LLC, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

SARIS, District Judge.

## I. INTRODUCTION

This case involves a dispute over the proper interpretation of a Long–Term Disability ("LTD") insurance policy issued by the Defendant, Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"), for the benefit of the Plaintiff, Christopher Smith.[1] Although the parties agree that Smith is disabled and thus entitled to benefits, the parties disagree about the amount of benefits to which he is due, based on different understandings of the policy language. Both parties have moved for relief, agreeing to allow the Court to decide the case as a case stated on a paper record. After briefing and a hearing, the motions are *ALLOWED–IN–PART* and *DENIED–IN–PART*.

## II. BACKGROUND

From July 1998 to February 2004, Christopher Smith was employed by Hol-

1. Count I is a claim for benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132; Count II is a claim for common law breach of contract.

lister Associates of Boston ("Hollister"), a recruiting firm. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ("Pl.'s Resp. to Def.'s SOF") [Docket No. 91]¶1.) Smith was covered by both a Short–Term Disability ("STD") insurance policy and an LTD policy issued by Jefferson Pilot to Hollister for the benefit of Smith and other Hollister employees. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts ("Def.'s Resp. to Pl.'s SOF") [Docket No. 87] ¶3.) Smith is a Type I diabetic. (*Id.* ¶1.) In December of 2003, Smith suffered a hypoglycemic event while sleeping, resulting in memory and other cognitive deficiencies. (*Id.*) These effects rendered Smith unable to perform his regular occupation, leading him to stop working on February 27, 2004. (*Id.* ¶2.)

In March 2004, Smith filed a claim for STD benefits, which Jefferson Pilot denied on July 12, 2004. (*Id.* ¶4.) Subsequently, Jefferson Pilot reversed its denial and granted STD benefits, finding that Smith was totally disabled from his own occupation under the terms of the STD policy. (*Id.* ¶5.) On October 3, 2005, Jefferson Pilot approved Smith's LTD claim, finding that he was totally disabled under the terms of the LTD policy. (*Id.* ¶6.) Since leaving Hollister, Smith has earned some income by building and selling houses one at a time. (*Id.* ¶9.)

Under the terms of the LTD policy, Smith is to be paid a "Total Disability Monthly Benefit" which is calculated by multiplying his "Basic Monthly Earnings" by the "Benefit Percentage" (60%) and subtracting "Other Income Benefits." (*Id.* ¶10.) The parties agree that Smith is disabled under the terms of the policy and is entitled to receive benefits. However, the parties disagree as to three issues regarding calculation of the amount of benefits. Specifically, they disagree as to 1) whether Plaintiff's gross pay or his net pay should be used in the calculation, 2) how his "Basic Monthly Earnings" should be calculated, and 3) whether Plaintiff's earned income constitutes a part of his "Other Income Benefits."

## III. DISCUSSION

■ By agreement, the parties have requested that the Court decide the case as a case stated on a paper record. Unlike with summary judgment, when deciding a case stated the Court "must review the record, draw such inferences as are reasonable, decide any significant issues of material fact, and, applying the governing law, enter such judgment as may be appropriate." *Watson v. Deaconess Waltham Hosp.*, 141 F.Supp.2d 145, 147 (D.Mass. 2001); *see also Boston Five Cents Sav. Bank v. Sec'y of the Dep't of Hous. and Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir. 1985); *Cont'l Grain Co. v. P.R. Mar. Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992).

■ A "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Brigham v. Sun Life of Can.*, 317 F.3d 72, 80 (1st Cir.2003). Here, Jefferson Pilot was not given discretionary authority to construe the terms of the plan. As such, the Court reviews the denial of benefits de novo. Accordingly, "no deference is given to the administrator's interpretation of the plan language," and the Court instead "applies the normal rules for contract interpretation." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir.2005).

### A. Net Pay or Gross Pay

Initially, Defendant calculated Plaintiff's benefits using his net salary, i.e. the

amount Smith earned after deductions for things such as medical flexible spending accounts and 401(k) contributions. Defendant has since acknowledged that its LTD policy does not authorize the deduction of these types of payments from Plaintiff's salary and that this calculation was in error. Their current position makes clear that they have come to agree with Plaintiff, and the Court, that gross pay, not net pay, is the appropriate starting point for determining benefits payable under the policy. (Mem. in Supp. of Def.'s Mot. for Summ. J. [Docket No. 74] 8.)

### B. "Basic Monthly Earnings"

■ The parties dispute the appropriate method of calculating Smith's "Basic Monthly Earnings." The policy reads:

ANNUAL SALARY means the Insured Employee's Basic Monthly Earnings or Pre-disability Income multiplied by 12. BASIC MONTHLY EARNINGS OR PREDISABILITY INCOME means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the determination date. The determination date is the last day worked just prior to the date the Disability begins.

It also includes:

1. commissions averaged over the 24 months just prior to the determination date or over the actual period of employment with the Employer just prior to that date, if shorter, not including renewal commissions; and

2. bonuses averaged over the 24 months just prior to the determination date or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include overtime pay, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's finan-

cial records, the amount for which premium has been paid, or the maximum covered earnings permitted by this Policy; whichever is less.

(Parties' Agreed Upon Administrative Record ("AR") 022.)

The dispute arises from the fact that while the policy indicates that "Basic Monthly Earnings" means the insured's "average monthly base salary or hourly pay from the Employer before taxes on the determination date," it does not specify how to calculate the insured's "average monthly base salary." Defendant argues that the only reasonable interpretation of the provision, when read in conjunction with the definition of "Annual Salary," is that the insured's "average monthly base salary" is the average of his monthly salary over the previous twelve months. (Mem. in Supp. of Def.'s Mot. for Summ. J. 14–15.) In Smith's case, this would amount to an "average monthly base salary" of $6,250. (*Id.* 8–9.) Plaintiff argues that, since no time period is given over which to "average" Smith's "monthly base salary," the only reasonable interpretation of the policy is that it calls for an average of his monthly salary over his entire period of employment at Hollister. This would amount to an "average monthly base salary" of $13,473.12. (Def.'s Resp. to Pl.'s SOF ¶ 12.) This interpretation is significantly more favorable to Smith because his income, after increasing from 1999 to 2000, declined in 2001, 2002, and 2003. (Pl.'s Resp. to Def.'s SOF ¶ 5.)

■■ ERISA-regulated employee benefit plans are interpreted under principles of federal common law. *See Filiatrault v. Comverse Tech., Inc.,* 275 F.3d 131, 135 (1st Cir.2001). However, "emerging federal common law must embody common-sense canons of contract interpretation, of which state law is the richest source." *Hughes v. Boston Mut. Life Ins. Co.,* 26

F.3d 264, 268 (1st Cir.1994) (internal citations and quotation marks omitted).

▌ "[S]traightforward language in an ERISA-regulated plan should be accorded its plain, ordinary, and natural meaning." *Filiatrault*, 275 F.3d at 135. Not all language is straightforward, however. "Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir.1995) (quoting *Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1083 (1st Cir.1989)). "[I]f a party demonstrates ambiguity in a plan on a particular question, reference may be made to extrinsic evidence to determine the parties' intended meaning." *Balestracci v. NSTAR Elec. and Gas Corp.*, 449 F.3d 224, 230–31 (1st Cir.2006). If the meaning of the language remains unclear, "[i]n keeping with the rule of *contra proferentem*, ambiguous terms should be strictly construed against the insurer." *Hughes*, 26 F.3d at 268, 270 n. 6.

The language at issue here is far from "straightforward." "Basic Monthly Earnings" is defined in terms of "average monthly base salary." But for an average of something like a monthly salary to have a "plain, ordinary, and natural meaning," it is essential to know the time period over which the average is being taken. Here, an end point, the determination date, is specified, but no starting point is given. Unless the policy anticipates the use of a heretofore undiscovered theorem for instantaneous averages, it is simply unclear whether the policy calls for an average of Smith's monthly salary from the last two, twelve, twenty-four, or more months. If anything, the fact that the language specifies that it is the "average monthly base salary ... from the Employer" suggests that the most reasonable interpretation is that the average is to be taken over the entire period of Smith's employment with Hollister.

Jefferson Pilot argues that the fact that the policy defines "Annual Salary" as the insured's "Basic Monthly Earnings ... multiplied by 12" somehow makes it clear that Smith's "Basic Monthly Earnings" are to be calculated by taking his average monthly base salary over his last twelve months with Hollister. (Mem. in Supp. of Def.'s Mot. for Summ. J. 14–15.) Jefferson Pilot is far off course. If anything, the definition of "Annual Salary" suggests that Jefferson Pilot's interpretation is unreasonable. Under Jefferson Pilot's understanding, "Annual Salary" is, for some unknown reason, calculated by taking Smith's salary over the past year, dividing it by twelve, and then multiplying it by twelve. If Jefferson Pilot's understanding of "Basic Monthly Earnings" were correct, the policy wastes an enormous amount of ink defining its terms: the policy could have been simplified by defining "Annual Salary" as "the insured's total salary over the last twelve months," and "Basic Monthly Earnings" as "the insured's Annual Salary divided by twelve." If anything, the definition of "Annual Salary" suggests the time period used to calculate Smith's "average monthly base salary" should be any number of months other than twelve.

As the language is ambiguous, the Court looks to extrinsic evidence, which Jefferson Pilot claims will reveal that Jefferson Pilot and Hollister both intended and understood the language to indicate that the insured's monthly base salary was to be averaged over the previous twelve months. The only evidence Jefferson Pilot points to regarding Hollister involves a different term and a different policy. Specifically, when Smith filed his initial claim for STD

benefits, Hollister filled the "Employee's Basic *Weekly* Earnings" field with $1442.30. (AR 303.) Jefferson Pilot regards this as significant because the STD policy defines "Basic Weekly Earnings" as "the Insured Person's average weekly base salary or hourly pay from the Group Policyholder before taxes on the determination date," language which is similar to the LTD policy's definition of "Basic Monthly Earnings." (AR 004.) As Jefferson Pilot notes, $1442.30 happens to be Smith's average weekly salary over his last 12 months at Hollister. (Def.'s Letter [Docket No. 94] 4.)

Unfortunately for Jefferson Pilot, this one entry does little to indicate Hollister's understanding or intent as to the meaning of "Basic Monthly Earnings." Not only does it relate to a different term, but the term is defined in a different policy. Further, not only was $1442.30 Smith's average weekly salary over his last 12 months at Hollister, but it was precisely Smith's weekly salary for each and every week of his last twelve months at Hollister, including his last week. (Pl.'s Resp. to Def.'s SOF ¶ 5.) Given the location of "Employee's Basic *Weekly* Earnings" on the form, right after the field for "Date Employee was Last Present at Work" and disconnected from any mention of "average weekly base salary," it is more likely that the Hollister employee who filled in the form understood the term to refer to Smith's weekly salary as of his last day present at Hollister. (AR 303.) And, given the stability of his salary over his last year at Hollister, the $1442.30 figure may have represented his weekly salary averaged over any number of weeks less than 52. Perhaps the Hollister employee averaged Smith's weekly salary over the past six months, or one month, or two weeks, or over the last thirteen weeks, the maximum benefit period under the STD policy. (AR 004.)

As for Jefferson Pilot's understanding and intent, not only is the extrinsic evidence unenlightening, but it reveals that Jefferson Pilot found its own policy ambiguous. The initial Jefferson Pilot benefits specialist to address Smith's claim appears to have interpreted "Basic Monthly Salary" without considering Smith's "average monthly base salary" at all. Instead, the benefits specialist appears to have calculated Smith's "Basic Monthly Salary" by taking Smith's weekly salary just prior to his becoming disabled, multiplying that figure by fifty-two, and then dividing by twelve. (AR 403.) This method seems to have been roughly consistent with Jefferson Pilot's training manual, which instructed its benefit specialists to calculate the "average monthly base salary" using "payroll records for 2 pay periods prior to the date of disability" and converting them "based upon the frequency of payroll (weekly, biweekly, semi-monthly, monthly)." (AR 354–55.)

Two months later, however, a second Jefferson Pilot benefits specialist revealed a different understanding of "Basic Monthly Earnings," calculating Smith's benefits by averaging his monthly salaries from 2002 and 2003, his last two full calendar years at Hollister. (Mem. in Supp. of Pl.'s Mot. for Summ. J. [Docket No. 78] 8–9; AR 173–75; AR 227–229.) When Smith's attorney challenged Jefferson Pilot's interpretation in 2006, a senior benefits specialist responded by quoting the disputed language and stating "[w]e believe it is reasonable for us to use Mr. Smith's last 2 years of earnings prior to his date of disability to determine his average monthly base salary," in direct conflict with Jefferson Pilot's current position that only its most recent interpretation is reasonable. (AR 191–93.)

When Smith's attorney appealed this decision, Jefferson Pilot launched yet another

interpretation of the language. Once again quoting the provision, a Jefferson Pilot disability appeals specialist explained,

> The word average is contained within the provision so that any sudden decrease or increase on the date of disability would not affect the benefit due. An insured may have had a sudden decrease in his salary due to his medical condition on his date of disability and then we would use an average or the last month or even two. Similarly, a sudden drastic increase on the date of disability would not be considered without proof of why there was such an increase. If the increase was due to filing the claim, an average or the prior month or two would be used.

(AR 142–44.) According to this interpretation of "Basic Monthly Earnings," it appears that Jefferson Pilot understood the phrase to have numerous different meanings, encompassing different time frames and calculations depending on the circumstances.

Now, Jefferson Pilot claims that there is only one reasonable interpretation of the phrase, a fourth interpretation, that is, that it calls for "averaging [Smith's monthly base salary] over a 12 month period." (Mem. in Supp. of Def.'s Mot. for Summ. J. 15.)[2] Jefferson Pilot's inability to understand its own policy makes the extrinsic evidence useless for determining the parties' intended meaning, and simply further indicates that the language is indeed ambiguous. As the ambiguity cannot be resolved by resorting to extrinsic evidence, in accordance with the rule of contra prof-erentem the term is strictly construed against the insurer as calling for the average of Smith's monthly base salary over his entire period of employment at Hollister.

## C. Reduction in Benefits Based on Earned Income

 The parties also dispute whether Plaintiff's earned income constitutes a part of his "Other Income Benefits" and thus can be deducted from his "Total Disability Monthly Benefit." "Other Income Benefits" is defined in the policy thus:

> OTHER INCOME BENEFITS mean those benefits shown below:
>
> 1. Any temporary or permanent benefits or awards for which the Insured Employee is eligible under:
>
> (a) Worker's or Workmen's Compensation Law. . . .
>
> 2. Any disability income benefits . . . under any compulsory benefit act or law.
>
> 3. Any disability income benefits . . . under:
>
> (a) any other group plan, sick leave or formal salary continuance plan of the Employer; or
>
> (b) any governmental retirement system. . . .
>
> 4. Any Disability Benefits or Retirement Benefits . . . under a Retirement Plan.
>
> 5. Benefits under the Social Security Act, or any similar plan or act. . . .

2. In fact, even Jefferson Pilot's briefing waivers on the "only reasonable interpretation" of the language, sometimes construing it as calling for an average of Smith's monthly salaries over his last twelve months of work (Mem. in Supp. of Def.'s Mot. for Summ. J. 3, 13, 15; Def.'s Mem. in Resp. to Pl.'s Mot. for Summ. J. [Docket No. 88] 5, 9, 10; Def.'s Letter 5), and other times as calling for taking his annual salary as of his last day of work and dividing it by twelve (Mem. in Supp. of Def.'s Mot. for Summ. J. 3, 8–9, 12, 14; Def.'s Mem. in Resp. to Pl.'s Mot. for Summ. J. 5). Although these interpretations lead to identical figures in this case, as Smith's salary was constant over his last year of work, they are quite different interpretations of the contract language.

6. Earnings the Insured Employee earns or receives from any form of employment.

These Other Income Benefits, except Retirement Benefits, are benefits resulting from the same Disability for which a Monthly Benefit is payable under this Policy.

(AR 037.) Plaintiff argues that the income he earns from building houses should not be deducted from the benefits owed to him because "earnings" were included under the heading "OTHER INCOME BENEFITS" and followed by the language "These Other Income Benefits ... are benefits resulting from the same Disability for which a Monthly Benefit is payable under this Policy," rendering it ambiguous.

Unlike "Basic Monthly Earnings," "Other Income Benefits" has a "plain, ordinary, and natural meaning." The only reasonable interpretation of this section is that the insurer may deduct from the payment the value of the six listed types of income the employee receives, including earnings from "any form of employment." Although the references to "benefits" and "resulting from the same Disability" reflect sloppy drafting, they do not create a second reasonable interpretation of the meaning of this section or render the language ambiguous. As the plain language of the contract states that earned income may be deducted from Smith's disability benefits payments, the contract must be given that meaning.

### ORDER

The parties' motions for relief [Docket No. 73; Docket No. 77] are *ALLOWED-IN-PART* and *DENIED-IN-PART* as follows:

1. On Count I, the Court declares that Jefferson Pilot's interpretation of "Basic Monthly Earnings" in the group policy is incorrect and that Jefferson Pilot must calculate Plaintiff's benefits on the basis of his average monthly gross pay over his entire period of employment at Hollister. Jefferson Pilot must also pay Smith retroactive benefits due based on this figure.

2. On Count I, the Court also declares that Jefferson Pilot's interpretation of subparagraph 6 of the "Other Income Benefits" provision in the group policy is correct and that in the future Jefferson Pilot may validly offset Plaintiff's earnings from any form of employment from his benefits under the group policy.

3. On Count I, the Court declares that any claims asserted by Plaintiff with respect to the "gross vs. net pay" issue are moot because Defendant agrees with Plaintiff's interpretation.

4. The Court dismisses Count II of the complaint for breach of contract on the ground of ERISA pre-emption.

5. Plaintiff's request for attorney fees and costs pursuant to 29 U.S.C. § 1132(g) is *ALLOWED.* The parties shall confer to resolve the issue or narrow the areas of dispute. Plaintiff shall deduct all time spent on the "Other Income Benefits" provision.