James R. MASSEY, Plaintiff,

v.

STANLEY–BOSTITCH, INC. and Administrator of the Stanley–Bostitch Retirement Plan for Salary Employees, Defendants.

No. 01–361S.

United States District Court,
D. Rhode Island.

March 28, 2003.

8

9

---

Barry J. Kusinitz, Law Office of Barry J. Kusinitz, Providence, RI, for Plaintiff.

Richard W. MacAdams, MacAdams & Wieck, Providence, RI, for Defendants.

### DECISION AND ORDER

SMITH, District Judge.

#### I. *Introduction*

From 1969 to 2000, James R. Massey ("Plaintiff" or "Massey") worked for The Stanley Works and its sundry predecessor entities ("the Employer"). This action arises because Massey claims that Defendant Stanley–Bostitch, Inc. and the Administrator of the Stanley–Bostitch Retirement Plan for Salary Employees (herein "the Plan" or "Defendants") have unjustly withheld monies allegedly due him under the applicable retirement plan.

The case is now before this Court on Defendants' Motion for Summary Judgment on all counts of the Complaint. The Court heard oral argument on December 23, 2002 and, after considering the parties' oral and written submissions, including post-argument briefs, the Court grants summary judgment as to Count I (breach of contract), Count II (promissory estoppel), Count III (recovery of pension benefits under 29 U.S.C. § 1132(a)(1)(B)), and Count IV (equitable relief under 29 U.S.C. § 1132(a)(3)).

#### II. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, this Court must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir.2002); *Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1st Cir. 1991); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' " *Mesnick*, 950 F.2d at 822 (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). In order to defeat a properly supported motion for summary judgment, therefore, the nonmoving party must es-

tablish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

## III. *Facts*

With the guidelines outlined above in mind, the Court sets forth the facts underlying this action. On September 16, 1969, Plaintiff was hired by the Employer as an hourly employee and initially participated in the Bostitch Pension Plan (the "Bostitch Plan"), in which both Plaintiff and the Employer were to make contributions (while Plaintiff alleges that he recalls that only he made contributions, this dispute is not material). Plaintiff made contributions to the Bostitch Plan, which were immediately 100% vested and could not be forfeited. According to the terms of the Bostitch Plan, the Employer's contributions were to vest only after Plaintiff completed his tenth year of employment.

The Employer froze and discontinued the Bostitch Plan on March 31, 1976, at which time Plaintiff was given the choice whether to switch from hourly to salaried employ, and whether to have his accrued pension benefit transferred from the Bostitch Plan to a new, non-contributory, defined benefit pension plan (the "Textron Plan"). Plaintiff chose to switch to salaried status. He claims that he made this change based on the Employer's assurances to him, orally and prior to this switch, that his pension benefits would be calculated as of September 1969. On March 29, 1976, Plaintiff withdrew all of the monies that he had contributed to the Bostitch Plan (totaling $1,192.37, including accrued interest). Defendants allege that by switching to the Textron Plan, the Plaintiff forfeited his employer-driven benefit under the Bostitch Plan. Plaintiff disputes this based, again, on alleged oral representations made to him by the Employer's representatives that the amount of his benefits would be calculated with reference to his "previous years of service."

Plaintiff participated in the Textron Plan until February 1986, when the Employer changed plans (again as a result of another acquisition), to the Retirement Plan for Salaried Employees of The Stanley Works (the "Salaried Plan"). Under the terms of the Salaried Plan, Plaintiff accrued a pension benefit based upon his combined service with The Stanley Works and the prior service credited to him under the Textron Plan (which Defendants claim began in 1976, and which Plaintiff claims began in 1969, the beginning of his service at Stanley–Bostitch). The Employer also created a pension profit sharing plan (the "PS Plan"), in which Plaintiff participated concurrently with the Salaried Plan. Under the provisions of the PS Plan, the Employer made contributions to Plaintiff's PS Plan account based in part on his years of vesting service since his date of hire with the Employer, *i.e.* 1969. Defendants emphasize that there is a serious and important distinction between the PS Plan contribution and the Employer's contributions to the Salaried Plan. Plaintiff alleges that the Employer's representatives assured him that his pension benefits would be calculated as of the start of his employment, and that the PS Plan's use of the 1969 start date is an indication that the Employer made the promises he alleges.

In 1995, the Employer froze the PS Plan, merged it into the Salaried Plan, and gave it a new name, The Stanley Works Retirement Plan ("Retirement Plan"). By this merger, the value of Plaintiff's PS Plan account as of December 31, 1994 was transferred to the Retirement Plan.

Plaintiff retired on September 16, 2000, and the Retirement Plan was terminated on July 31, 2001. Under the terms of the Retirement Plan, Plaintiff's pension benefit

was to be calculated according to his years of "Credited Service," defined as those years as an employee of The Stanley Works from February 1, 1986, or Plaintiff's original hire date, whichever was later, through the earlier of the date of Plaintiff's termination or January 31, 1998. Thus, Plaintiff earned 12 years of "Credited Service" under this calculation. Additionally, Plaintiff was given 9.75 years of "Credited Service" for the time he participated in the Textron Plan, which Defendants claim was from April 1, 1976 through January 31, 1986 (and which Plaintiff disputes). Defendants therefore claim that Plaintiff's years of "Credited Service" total 21.83663 years, while Plaintiff argues that he should have received benefits based on his 31–plus years of employment.

Massey filed suit in Rhode Island Superior Court on June 29, 2001, alleging four causes of action: (1) breach of contract (seeking damages); (2) promissory estoppel (seeking injunctive relief); (3) recovery of pension benefits under 29 U.S.C. § 1132(a)(1)(B), part of the Employee Income Retirement Security Act ("ERISA")[1] (seeking damages); and (4) breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), also part of ERISA (seeking injunctive relief). Defendants removed the case to this Court on August 1, 2002, and answered the Complaint on August 17, 2002, denying Plaintiff's allegations and interposing several affirmative defenses. Defendants now move for summary judgment on all counts.

### IV. *Analysis*

1. *29 U.S.C. § 1132(a)(1)(B): Calculation of Benefits Under the Retirement Plan*

Before exploring the language of the relevant plan, it is necessary to set forth

the standard of review applicable to Count III of the Complaint.

a. *The Arbitrary and Capricious Standard*

When an ERISA plan vests discretionary authority in the claim administrator to determine eligibility for benefits, the court reviews the administrator's decision using the arbitrary and capricious standard. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Terry v. Bayer Corp.*, 145 F.3d 28, n. 6 (1st Cir.1998); *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 183 (1st Cir.1998); *Vukic v. Melville Corp.*, 39 F.Supp.2d 163, 166 (D.R.I. 1999); *Canis v. Coca–Cola Enterprises, Inc.*, 49 F.Supp.2d 73, 81 (D.R.I.1999). This standard of review applies both to the interpretation of plan provisions and to fact-based ERISA benefit denials challenged under 29 U.S.C. § 1132(a)(1)(B). *See Tavares v. Unum Corp.*, 17 F.Supp.2d 69, 75 (D.R.I.1998); *Grady v. Paul Revere Life Ins. Co.*, 10 F.Supp.2d 100, 108–109 (D.R.I.1998). Even if the court disagrees with the decision, or if the employee offers a competing reasonable interpretation, the court must not disturb a plan administrator's interpretation if it is reasonable. *See Canis*, 49 F.Supp.2d at 82; *Vukic*, 39 F.Supp.2d at 166. The arbitrary and capricious standard is the "least demanding form of judicial review" and requires only that determinations be "rational in light of the plan's provision," as well as reasonable with no abuse of discretion. *Coleman v. Metropolitan Life Ins. Co.*, 919 F.Supp. 573, 581 (D.R.I.1996) (citing *Perry v. United Food and Commercial Workers District Unions 405 and 442*, 64 F.3d 238, 242 (6th Cir.1995)). In other words, " 'when it is possible to offer a reasoned explanation, based on the evidence, for a particular

---

**1.** *See* 29 U.S.C. § 1001*, et seq.*

**12**

outcome, that outcome is not arbitrary and capricious.'" *Coleman,* 919 F.Supp. at 581.

■ Here, Section 14.8 of the Retirement Plan states:

**Discretionary Authority to Interpret the Plan.** The Plan Administrator shall have the discretionary authority to interpret the provisions of this Plan and to determine all questions relating to eligibility for benefits hereunder.

■ This provision is plainly sufficient to trigger the arbitrary and capricious standard. "[W]here an ERISA plan confers discretionary authority upon the administrator to determine eligibility for benefits or to construe the terms of the plan, then the district court is to apply the arbitrary and capricious standard of review to the administrator's factual determinations." *Grady v. Paul Revere Life Ins. Co.,* 10 F.Supp.2d 100, 110 (D.R.I. 1998).

b. *Calculation of Benefits*

■ There is little doubt but that Defendants calculated Plaintiff's benefits in compliance with the terms of the Retirement Plan. Plaintiff himself conceded at oral argument that Defendants' calculation was correct according to the Retirement Plan's provisions. This, coupled with the generous standard of review outlined above, leads the Court inexorably to the conclusion that it should grant summary judgment as to Count III of the Complaint.

2. *ERISA Preemption as to Breach of Contract Claim*

■ In 1974, Congress passed ERISA (1) to protect employees from abuse and mismanagement of their employee benefit funds and (2) to protect employers from having to comply with numerous and varied regulations regarding employee benefits. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111

S.Ct. 478, 112 L.Ed.2d 474 (1990) (Congress wanted "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government."); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."); *Massachusetts v. Morash,* 490 U.S. 107, 112, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) ("ERISA was passed by Congress ... to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits.") (citations omitted); *Champagne v. Revco D.S., Inc.,* 997 F.Supp. 220, 221 (D.R.I.1998) ("ERISA was passed by Congress ... to protect employers from a 'patchwork' scheme of regulations regarding employee benefits.") (citations omitted).

To attain these goals, Congress included a preemption provision in the ERISA statute which states: "[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). To determine the scope of ERISA's preemption provision, courts have analyzed Congress' intent and concluded that Congress meant to draft a broad and comprehensive ERISA preemption provision. *See FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA.");

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (Congress drafted ERISA's "deliberately expansive" language "to 'establish pension plan regulation as exclusively a federal concern.' ") (citing *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)); *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125, 127, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) ("ERISA's pre-emption provision assures that federal regulation of covered plans will be exclusive."); *Boston Children's Heart Foundation, Inc. v. Nadal–Ginard*, 73 F.3d 429, 439 (1st Cir.1996) (stating Congress drafted the ERISA preemption provision "to ensure uniformity in such plans by preventing states from imposing divergent obligations upon them") (citations omitted).

 Applying this legal bulwark, the Court addresses the Defendants' pre-emption claim.[2] "ERISA preemption analysis ... involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir.1998). There is no dispute that the Retirement Plan is an employee benefit plan.

 As for the second element, courts have interpreted the "relate to" language in ERISA's preemption provision "in the normal sense of the phrase. . . ." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. 2890. Consequently, "a law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Id.; see Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 52 (1st Cir.2000) (state common

law breach of contract claim preempted); *McMahon*, 162 F.3d at 38 (employee's state common law claims for, *inter alia,* breach of contract and interference with advantageous business relationship were preempted); *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 198–200 (1st Cir.1997) (finding state common law claim for breach of contract preempted after determining that it fell within ERISA's exclusive civil enforcement regime).

Plaintiff has pled the existence of an ERISA plan in the Complaint, and has alleged that his claim for breach of contract is based on Defendants' alleged miscalculation of his benefits under that plan. The language of the Complaint itself demonstrates that Plaintiff's breach of contract claim therefore "relates to" or has a connection with the Retirement Plan. Count I is preempted and appropriate for summary judgment.

3. *"Equitable" Claims, Preemption and the Great–West Case*

 Plaintiff brings two causes of action, Counts II (promissory estoppel) and IV (29 U.S.C. § 1132(a)(3)) of the Complaint, based on allegations of an assertedly "equitable" nature. There is no dispute, however, that the *remedy* Plaintiff seeks is purely monetary—*i.e.,* that Defendants compensate him for the additional years of service to which he claims entitlement.

It is obvious to this Court that Count II is the legal doppelgänger of Count III, the claim under § 1132(a)(1)(B): both seek the same legal relief based on the same, allegedly warranted recalculation under the Retirement Plan. It follows inescapably that

---

**2.** The determination of whether or not a federal statute preempts a state statute or state common law claims is a question of law and not fact. *See Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 793 (1st Cir.1995); *Degnan*

*v. Publicker Industries, Inc.*, 83 F.3d 27, 29 (1st Cir.1996); *Donato v. Rhode Island Hospital Trust National Bank*, 52 F.Supp.2d 317, 323 (D.R.I.1999).

the common law promissory estoppel claim must "relate to" the Retirement Plan, and must therefore be preempted.

Plaintiff argues that "[w]hether a pensioner's estoppel-based claims exist within ERISA is still an open question within the First Circuit[.]" Memorandum of Plaintiff James R. Massey in Opposition to Defendants' Motion for Summary Judgment, p. 8.

Plaintiff relies heavily on *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51 (1st Cir.2001). While it is true that in *Mauser*, the First Circuit left open the question of whether ERISA preempts an equitable estoppel claim in all cases, the court affirmed the district court's summary judgment on that count because "[the plaintiff's] equitable estoppel claim is virtually indistinguishable from" another of the plaintiff's claims. *Id.* at 58. So too here, where Plaintiff brings a common law promissory estoppel claim and simultaneously brings a claim under 29 U.S.C. § 1132(a)(1)(B) seeking precisely the same relief. While some doubt remains in this Circuit about whether ERISA preempts a promissory estoppel claim in all cases, in this Court's view there can be no doubt that the allegations underlying Count II "relate to" Plaintiff's benefits plan in this case, and that the state law equitable claim is duplicative of Plaintiff's ERISA-based claims. Moreover, the fact that Plaintiff's § 1132(a)(1)(B) fails on its merits, as discussed *supra* at 9, does not entitle Plaintiff to pursue the same remedy by affixing to it the label "promissory estoppel." Summary judgment should therefore enter as to Count II.

 There remains only Count IV of the Complaint, styled, "Equitable Relief under ERISA." There is a veritable mine of case law indicating that equitable relief under 29 U.S.C. § 1132(a)(3) [3] is limited to those plan participants who are unable to avail themselves of other remedies provided under ERISA.[4] *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief.") (emphasis in original); *Larocca v. Borden*, 276 F.3d 22, 27–29 (1st Cir.2002); *Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 13 (1st Cir.1994) (disabled retirees who sought to recover taxes on lump-sum payment from employer, based on breach of fiduciary duty theory, could not recover under § 1132(a)(3) because compensatory legal damages are not "appropriate equitable relief" under the statute).

The First Circuit has expressed some misgivings about (although it has not yet decided) whether reinstatement of beneficiary status and equitable restitution of past due benefits are available remedies under § 1132(a)(3):

This court has recently noted the uncertainty surrounding whether a claim for

---

**3.** 29 U.S.C. § 1132(a)(3) provides:

A civil action may be brought—

. . . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

**4.** Following oral argument on December 23, 2002, the Court agreed to the request of the parties to submit post-hearing briefs on the issue of the scope and application of § 1132(a)(3).

reinstatement of beneficiary status or equitable restitution of past due benefits can be classified as a request for equitable relief or a request for money damages, *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 206 (1st Cir.2002), particularly in light of the recent Supreme Court holding in *Great–West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In *Great–West Life*, the Supreme Court held that § 1132(a)(3) relief is available only in cases that follow the historical model for cases brought at equity. It stated that "[a]lmost invariably ... suits seeking ... to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' ... since they seek no more than compensation for loss resulting from the defendant's breach of legal duty," *id.* at 713 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918–19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting)), and that suits for restitution were ordinarily only available "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 714, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749. It is not yet clear how the line of precedent from our sister circuits indicating that restitution and reinstatement are equitable remedies under § 1132(a)(3), *see, e.g., Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 384 (4th Cir.2001); *Bowerman v. Wal–Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir.2000), will be affected by *Great–West.* Compare *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F.3d 735, 740–41 n. 7 (8th Cir.2002) (plaintiff seeking declaration that plan amendments were void and restoration of full benefits under original plan presented equitable claim under § 1132(a)(3)), *with Kishter v. Principal Life Ins. Co.*, 186 F.Supp.2d 438, 445 (S.D.N.Y.2002) (beneficiary's claim for insurance money she claimed she would have received if not for fiduciary's breach of duty was foreclosed by *Great–West*). Because we decide this case for the defendants on other grounds, we need not decide whether *Great–West* would preclude the type of relief Watson seeks.

*Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 110 n. 8 (1st Cir.2002).

This Court inquired of Plaintiff's counsel at oral argument to identify precisely the nature of the relief sought, and counsel responded unequivocally, both orally [5] and later in writing,[6] that Plaintiff seeks to recover additional benefits that he claims are due him, based on a numerical recalculation. This relief can only be deemed a request for money damages.

Even if this relief could be interpreted otherwise, the Court declines to inject claims *sua sponte* for equitable relief (reinstatement of beneficiary status or restitution, for example) into the Complaint that have been neither pled nor otherwise requested, and then analyze their efficacy. *See United States v. Zannino*, 895 F.2d 1,

**5.** Transcript of Oral Argument, Dec. 23, 2002, pp. 39, 41:

MR. KUSINITZ: "The issue is, does [Plaintiff] get credit for the first 7 years toward the ... calculation of his benefit. I think that's the issue in the case.... The dispute ... [is] that they're not counting the first 7 years."

**6.** Plaintiff's Post Hearing Memorandum, pp. 1–2:

Mr. Massey contends that he should receive credit for roughly 28.3 years [of service to the Employer].... [T]he parties diverge on whether Mr. Massey should receive credit for those original 6.5 years that he worked. If so, he would be entitled to an additional sum of roughly $25,000.00....

**16**

17 (1st Cir.1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: 'Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly' or forever hold its peace.' ") (citing *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988) (quoting *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir.1988))). Plaintiff has made amply clear that he wishes to use § 1132(a)(3) to obtain an injunction (the purportedly "equitable" hook) compelling the Employer to pay him more money. *Great–West* prohibits this very application of § 1132(a)(3), thereby requiring summary judgment as to Count IV.

*Conclusion*

For the foregoing reasons, Defendants' Motion for Summary Judgment as to all counts of the Complaint is GRANTED. IT IS SO ORDERED.