John W. LIVICK, Plaintiff,

v.

The GILLETTE COMPANY and The
Gillette Company Retirement
Plan, Defendants.

Civil Action No. 05–11094–JLT.

United States District Court,
D. Massachusetts.

June 12, 2007.

Ian O. Smith, Thomas G. Moukawsher, Moukawsher & Walsh, LLC, Hartford, CT, Mala M. Rafik, Rosenfeld & Rafik, P.C., Boston, MA, for Plaintiff.

Richard P. Ward, Anthony D. Rizzotti, David C. Potter, Ropes & Gray LLP, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

In this case Plaintiff, John W. Livick, seeks to use the provisions of the Employee Retirement Income Security Act ("ERISA") to recover the benefits incorrectly promised to him when Defendant Gillette Company's ("Gillette") Human Resources Department gave him repeated mistaken pension estimates.

### Background

The following facts are drawn from the Parties' statements of facts. Except where noted, the facts presented here are undisputed. Plaintiff is a former employee of Parker Pen Company, which was acquired by Gillette's Stationary Products Group ("SPG") in 1996. Plaintiff accumulated seventeen years and three months of service with Parker Pen at its Janesville, Wisconsin location before the facility was acquired by Gillette in 1996. Upon becoming a Gillette employee, Plaintiff received a letter informing him that his prior Parker Pen Company service would not count when computing his separate and distinct Gillette pension benefit.

In January 1999, Gillette SPG announced it was closing the Janesville facility. In July 1999, Plaintiff accepted a position with Gillette SPG in Boston, which he began in September 1999. In August 2000, Gillette announced that it had agreed to sell SPG to Newell Rubbermaid, Inc.

On October 16, 2000, Gillette held a SPG benefits meeting for terminated SPG employees to explain applicable benefits. Plaintiff attended that meeting, where a company official told him that his eligibili-

ty would be determined by calculating his years of service *including* his time at Parker Pen. The company official also told Plaintiff to seek further information about his benefits from Wayne Brundige ("Brundige"), a Gillette benefits counselor in the Human Resources Department.

On October 25, 2000, Plaintiff met with Brundige to obtain specific termination settlement and pension benefits information. At that meeting, Plaintiff asked Brundige about the pension benefits, and Brundige gave Plaintiff a pension retirement calculation based on twenty-eight years of service (which included Plaintiff's time at Parker Pen), totaling $2,832.04 a month. Plaintiff told Brundige that the numbers looked too good to be true, and asked Brundige if the figure factored in that he spent many years as a Parker Pen employee. Brundige noted that while the number was an estimate, it was essentially correct.

On December 5, 2000, Plaintiff used the Gillete Pension Estimator website, which contained a disclaimer that it was just an estimate, but which represented a similar number. Plaintiff told Brundige about the estimate and Brundige made a minor change to his own estimate. Plaintiff left his job with Gillette on January 12, 2001.

Plaintiff suggests that he left voluntarily. While it may be true that he could have looked for another job with Gillette if not for his belief that he would get a good pension benefit, the facts plainly show that he was involuntarily terminated from his existing position. Plaintiff asserts that in reliance on the figures he had been presented, he did not seek further employment from Gillette and subsequently turned down a lucrative job offer believing that his monthly pension would support him. Defendants dispute whether Plaintiff actually relied on this information, or if other factors drove Plaintiffs subsequent

employment decisions. As will be shown below, this question of reliance is not material to the court's ruling.

In the Spring of 2002, Plaintiff checked the Pension Estimator website again, which calculated a monthly benefit that was $300 greater than Brundige's estimate. When Plaintiff spoke to the Human Resources Center to determine which figure was correct, he was told that the website calculator was more accurate. The Center also told him that they would send him a new estimate.

On June 28, 2002, Plaintiff received a new pension estimate that was calculated using only the years of service at Gillette (eight years) rather than the combined time at Gillette and Parker Pen. The new monthly estimate was $2,042.57 less than the estimate from Brundige. When Plaintiff inquired, he was told that Brundige's original estimate was incorrect and that the new amount was accurate. Plaintiff requested the original benefit figure and brought this suit. On May 31, 2006, after the commencement of litigation, Ned Guillet, plan administrator, and Vice President of Human Resources, wrote Plaintiff to formally deny his request under the plan for the older benefits estimate.

Plaintiff charges that Brundige was the manager of the food services department before he was promoted to Human Resources. Plaintiff further asserts that Defendant Gillette negligently provided Brundige with no real job specific training. Defendants dispute these charges, adducing evidence that Brundige learned on the job. Again, as subsequent analysis will show, this dispute is not material.

Plaintiff alleges that Defendants' negligence amounted to a breach of their fiduciary duty to Plaintiff. Plaintiff asks this court to remedy this alleged breach under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3),

by using its equitable power to issue an injunction ordering Defendants to pay Plaintiff the benefits that Human Resources Department initially represented. Although not explicitly raised in his complaint, Plaintiff also suggests that, in the alternative, the court should equitably estop the Defendants from paying benefits in a manner inconsistent with their previous representations.

## Discussion

### I. Defendants' *Motion to Strike*

■ Plaintiff has submitted an affidavit from Peter Miller, who was the Human Resources Manager for Gillette in Janesville, Wisconsin from 1993 to 1999. In ¶ 5 of his affidavit, Miller states that "Gillette corporate" effectively exercised control over the administration of the pension system. He states that "Gillette corporate" made it clear to him that they would make decisions that he would communicate to employees. Plaintiff argues that these facts show that Gillette was in fact acting as plan fiduciary.

Defendants move to strike, claiming that Miller's affidavit did not show an adequate basis in personal knowledge and that he was merely speculating as to how the central Human Resources department operated. Plaintiff amended the declaration to provide greater detail laying out Miller's basis of knowledge. This amendment reveals the basis for Miller's statements, but does not make those statements relevant to this litigation. Miller did not work in the Boston office with Brundige, and Mil-

ler was not employed at the time Plaintiff was terminated. The affidavit is not probative of the practices and procedures used in determining Plaintiff's benefits. Defendants' *Motion to Strike* is ALLOWED.

### II. Defendants' *Motion for Judgment on the Pleadings and for Summary Judgment*

#### A. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[1] The question is not whether there is some factual dispute, but rather whether there is a genuine question of material fact.[2] As noted above and explained below, there is no dispute as to any material fact. Because this case can be resolved as matter of law by clarifying and applying the requirements of ERISA without reference to any disputed fact, summary judgment is appropriate.

#### B. Availability of Equitable Relief under ERISA § 502(a)(3)

##### 1. Standing

■ ERISA expressly provides plan participants and beneficiaries with standing to sue for benefits due under the terms of an employee benefit plan.[3] But, if a plaintiff can pursue benefits under the plan pursuant to § 502(a)(1), an adequate remedy under the plan exists which bars a further remedy under § 502(a)(3) for breach of fiduciary duty.[4] A plaintiff need

---

1. Fed.R.Civ.P. 56(c); *Mulloy v. Acushnet Co.*, 460 F.3d 141, 145 (1st Cir.2006).

2. *Mulloy*, 460 F.3d at 145 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

3. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a participant or bene-

ficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").

4. *See LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir.2002) (finding that where defendant had offered to reinstate the coverage under its

not elect his remedy before filing a complaint, but rather is prohibited from receiving equitable relief under § 502(a)(3) in addition to some other form of relief.[5] Therefore, if "Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate."[6]

■ Defendants argue that since Plaintiff is a "participant" for purposes of § 502(a)(1), he "is barred from seeking 'appropriate equitable relief' under ERISA § 502(a)(3)."[7] But Defendants' argument fails in this case. Plaintiff is not trying to recover "benefits due to him under the terms of his plan."[8] All parties agree that the terms of the Gillette plan never mandated the compounding of Plaintiff's service with Gillette and his service with Parker Pen. Accordingly, Plaintiff could never recover the benefits he seeks under the plan pursuant to § 502(a)(1). He has no adequate remedy by this route. Rather, Plaintiff asserts that the Defendants

breached their fiduciary duty by communicating incorrect information about Plaintiff's benefits under the plan. While Plaintiff's claim does not ultimately succeed, it does not fail for lack of standing.[9]

### 2. Fiduciary Duty

Plaintiff charges that Defendants negligently hired Brundige and also that Brundige's negligence in computing Plaintiff's benefits estimates can be imputed to Defendants. Plaintiff argues these negligent acts constitute a breach of fiduciary duty. Defendants counter that negligence cannot be a basis for finding a breach of fiduciary duty, but precedent indicates otherwise.[10]

Defendants next argue that Brundige worked only in a ministerial capacity in the Human Resources Department for Defendant Gillette, and that he was not a fiduciary since he did not share in the discretionary fiduciary power exercised by the Compensation Committee. This argument is more difficult to resolve.

plan, as well as retrospectively reinstate benefits for a period in which employees were wrongfully terminated, the plaintiffs could not use their distrust of the future of the plan to argue for a cash value of the reinstatement as appropriate equitable relief).

5. See Watson v. Deaconess Waltham Hosp., 141 F.Supp.2d 145, 152 (D.Mass.2001); aff'd 298 F.3d 102 (1st Cir.2002).

6. Varity v. Howe, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

7. Defs.' Mem. in Supp. of their Mot. for J. on the Pleadings and Summ. J., Paper # 29, 11.

8. 29 U.S.C. § 1132(a)(1)(B).

9. As will be explained below, Plaintiff's claim fails as Defendant Gillette did not act in a fiduciary capacity and because Plaintiff has no equitable remedy as Defendants were not unjustly enriched. If a future case presented facts where a plan fiduciary lied to plan members about their benefits in order to unjustly enrich the plan by getting the plan members to take some particular action, it would seem to be quite unfair to allow the plan to escape liability by requiring all participants to accept limited recover under the plan pursuant to ERISA § 503(a)(1). To reach such a result would be to reject the stated goals of ERISA.

10. Green v. ExxonMobil Corp., 470 F.3d 415, 422 (1st Cir.2006) ("As for a duty of care, a fiduciary is expected to act with reasonable diligence, id. § 1104(a)(1)(B); but, for reasons already indicated, sending the forms within a week or so after employment—where no promise or plan deadline was violated— does not in the present circumstances even arguably comprise unreasonable conduct."). See also 29 U.S.C. § 1104(a)(1)(B). Although Defendants suggest that the First Circuit has required bad faith, that requirement was announced in the context of a technical notice requirement, and need not be read to apply to breach of fiduciary duty claims. See Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 113 (1st Cir.2002).

### a. *Definition of Fiduciary*

█ ERISA § 502(a)(3) allows equitable remedies for breaches of fiduciary duty.[11] To recover under such a theory, a Defendant "must have been acting as a fiduciary of the Plan when it engaged in the conduct about which [Plaintiff] complains."[12]

█ Gillette is a named fiduciary in the plan document, but has delegated all of its fiduciary responsibility to the company's Compensation Committee.[13] Unless the named fiduciary was itself negligent, a named fiduciary is not liable for the breaches of one to whom power is delegated.[14] But the delegation does not end the inquiry. Even though Defendant Gillette may have endeavored to separate its corporate operations from its fiduciary duties, Defendant Gillette could be liable if it acted functionally as a fiduciary. ERISA provides that: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."[15] Though the plan purports to delegate fiduciary authority to the Compensation Committee rather than "Gillette corporate" or Brundige, these parties could still be considered fiduciaries if they in fact acted as fiduciaries.[16]

Congress intended the ERISA definition of fiduciary to be construed liberally to enable the courts to impose liability on all parties whose acts injure ERISA plans and their participants.[17] Unlike traditional trust law, ERISA defines fiduciary not in terms of formal trusteeship but in functional terms "of control and authority over the plan ... thus expanding the universe of persons subject to fiduciary duties."[18] The fact that Gillette did not formally classify Brundige as a fiduciary is not controlling.

█ A functional fiduciary is one that "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan."[19] ERISA unfortunately does not define "management" or "administration."[20]

### b. *Is providing benefits estimates a fiduciary function?*

█ The Defendants argue that "the provision of pension estimates" is a purely ministerial non-fiduciary duty. This proposition finds support in the case law. In *Beddall v. State Street Bank and Trust Co.,* the First Circuit clarified that the

---

11. *Varity,* 516 U.S. at 507–515, 116 S.Ct. 1065.

12. *Watson,* 141 F.Supp.2d at 152.

13. The Gillette Company Retirement Plan, Defs.' App., Paper # 31, Ex. 6, p. 37–38.

14. 29 U.S.C. § 1105(c)(2); 29 C.F.R. § 2509.75–8 (FR–14) (2007).

15. 29 U.S.C. § 1002(21)(A). For further discussion of fiduciary status under ERISA, *see* Susan P. Serota & Frederick A. Brodie, *ERISA Fiduciary Law* 12–17 (2d ed.2006).

16. *See Law v. Ernst & Young,* 956 F.2d 364, 372–4 (1st Cir.1992).

17. *See* 120 Cong. Rec. 3977, 3983 (1974).

18. *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

19. 29 U.S.C. § 1002(21)(A).

20. *See* Jay Conison, *Employee Benefits Plans in a Nutshell* 35 (2003).

"mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status" and that fiduciary liability "arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms." [21] In *Fitch v. Chase Manhattan Bank*, it was found that purely ministerial activities, like the calculation of a benefit estimate, require no exercise of discretion.[22] In *Toomey v. Jones*, an outside company was hired as a non-fiduciary to conduct certain plan activities, compile and send annual reports of the Plan, and discuss in general terms what the value of employee stock might be.[23] Similarly, in *Brosted v. Unum Life Ins. Co. of America*, a miscalculation in benefits was found not to be a fiduciary breach.[24] Finally, in *Watson*, the court determined that an internal Human Resources department that informed employees of their benefits, enrolled them in the Plan, and acted as an intermediary between the employee and the insurer did not engage in fiduciary like acts.[25]

Some of the above cases have minor factual distinctions with the facts of this case, notably that the ministerial agent was, in some cases, a third party contractor. Nonetheless, in these cases and in the present case, the essential facts are the same: the plaintiff is complaining of mistaken benefits estimates given to him on behalf of his employer.

In response to these cases, Plaintiff admits that Brundige's actions alone would not qualify him as a fiduciary. Plaintiff argues that the totality of the actions, including Gillette's statements to Plaintiff that he should go to Brundige for information, Brundige's repeated misstatements, and the misinformation on the online calculator, show that Gillette and Brundige had functionally assumed the role of administering the plan.

This proposition draws some support from *Varity*, where the Supreme Court reasoned that conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, was an exercise of a power appropriate to carrying out an important plan purpose.[26] In a pre-*Varity* case, the First Circuit applied a statutory penalty to a defendant for failing to provide plan benefit information, and noted that "[i]f to all appearances [an employer] acts as the plan administrator in respect to dissemination of information concerning plan benefits, it may properly be treated as such for purposes of the liability provided under [ERISA]." [27] Furthermore, other precedent from other circuits can also read to impose fiduciary duty under such a theory.[28]

---

21. 137 F.3d 12, 18 (1st Cir.1998).

22. 64 F.Supp.2d 212, 229 (W.D.N.Y.1999).

23. 855 F.Supp. 19, 24 (D.Mass.1994).

24. 421 F.3d 459, 466 (7th Cir.2005) (finding that negligent reliance on the ministerial computations of third parties was not actionable, so long as defendant was prudent in choosing these third parties).

25. 141 F.Supp.2d at 153–54.

26. 516 U.S. at 503, 116 S.Ct. 1065.

27. *See Law*, 956 F.2d at 373 (1st Cir.1992).

28. *See Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir.2001) (where an employer communicates information about the contents of a plan to beneficiaries, the employer may create a fiduciary obligation); *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 985 (3d Cir.1995) (finding liability when a non-member of the Annuities and Benefits Committee, who was nevertheless an employee of the company, was authorized "to advise employees of their rights and options under the Pension Plan" and was generally under-

The distinction between a purely ministerial duty and an administrative fiduciary duty is difficult to draw. In this case, Plaintiff is really only complaining of the fact that Gillette gave him mistaken estimates. The above-cited case law shows these mis-estimates are ministerial reporting failures. *Varity* dealt with misrepresentations about the subjective health and viability of a plan, where the defendants encouraged plaintiffs to switch plans.[29] In this way, the defendants in *Varity* were purporting to be fiduciaries, relaying information that only they would know regarding the condition of the plan. It was, therefore, fitting to hold them accountable as fiduciaries. In contrast, Plaintiff simply relied on Brundige and Gillete to provide him with an estimate of benefits due under the terms of the plan, an estimate that Plaintiff himself was able to objectively question using the readily available plan documents. Accordingly, Brundige did not give Plaintiff his subjective discretionary assessment of the plan, but instead provided ministerial information.

Plaintiff also suggests Defendants should be liable for their hiring of Brundige. "A fiduciary also is to be liable for the loss caused by the breach of fiduciary responsibility by another fiduciary of the plan if he enables the other fiduciary to commit a breach through his failure to exercise prudence . . . in carrying out his specific responsibilities."[30] In other words, Defendants could be liable if they negligently chose an agent to exercise fiduciary duty. But here, where Brundige was acting simply as a ministerial agent, it follows that when Defendant Gillete hired him, it was simply taking a ministerial action, but was not reasserting its functional role as a plan fiduciary. Gillette created Brundige as a ministerial agent, and Defendant Gillette is not responsible as a fiduciary for Brundige's negligence in computing benefits.

### 3. Availability of Remedy

As an alternative basis for its ruling, the court further notes that even if Defendants had breached a fiduciary duty, Plaintiff is without remedy.

The general rule in this circuit has been that extra-contractual damages for injuries sustained as a result of the failure to provide benefits due are not available.[31] In *Drinkwater v. Metropolitan Life Insurance Co.*, the First Circuit joined six other circuits in holding that "other appropriate equitable relief" pursuant to 29 U.S.C. § 502(a)(3) does not authorize compensatory money damages that are "extra-contrac-

---

stood by company employees that the representative was the person with whom plan participants should speak regarding possible changes to the pension plan); *Anderson v. Resolution Trust Corp.*, 66 F.3d 956, 960 (8th Cir.1995) ("There is no question but that . . . answering questions about a plan, noting changes in the plan, [and] disseminating information directly to plan participants concerning their rights within the plan . . . are classic fiduciary activities." (quoting *Pickering v. USX Corp.*, 809 F.Supp. 1501, 1567–68 (D.Utah 1992))); *Switzer v. Wal–Mart Stores*, 52 F.3d 1294 (5th Cir.1995) (even though an employer may not have a duty to communicate facts relating to the status of an employee's benefits, when an employer voluntarily assumes such a duty it becomes a plan fiduciary and is obligated to provide employee with clear and accurate information).

29. 516 U.S. at 493–94, 116 S.Ct. 1065.

30. H.R. Conf. Rep. No. 93–1280 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5080.

31. *See, e.g., Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir.1998) (rejecting a claim for money damages where plaintiff alleged defendant plan failed to provide necessary health benefits due under the plan).

tual."[32] Relief under ERISA § 502(a)(3) is limited solely to equitable relief and does not authorize the payment of money damages, which are a form of legal relief.[33] Thus, compensatory damages are only available to restore a plan to its uninjured condition; plaintiffs cannot obtain compensatory or punitive damages for breach of fiduciary duty.[34]

■■■ This does not conclude the discussion, however. The Supreme Court in *Great–West Life & Annuity Insurance Co. v. Knudson*, held that while money damages were generally unavailable under § 503(a)(3), there remains a possibility of payments of money under narrow circumstances where the restitution could be considered equitable and not legal.[35] Restitution can qualify as equitable relief when it is in the form of a constructive trust or an equitable lien, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."[36] An accounting of profits from an embezzling trustee, for example, would be ordered in a suit in equity. This type of restitution action holds the defendant liable for his profits, not for plaintiff's damages.[37] The *Great–West* Court reasoned that the ERISA plaintiff must "seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."[38] This is consonant with the general purpose of restitution which is to "prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction."[39]

In *Varity*, the Supreme Court did authorize a monetary award of equitable relief against a plan administrator for breach of fiduciary duty where such relief was not a simple disguise for damages sought.[40] Many courts have held that under § 502(a)(3), the equitable remedy of restitution may, in some instances, include compelling a fiduciary to pay money to the plaintiff.[41] In *Watson*, the court noted that in light of ERISA's legislative history,

**32.** 846 F.2d 821, 825 (1st Cir.1988) (rejecting plaintiff's attempt to secure money damages representing the difference between his benefits under the existing plan and the potential benefits under a plan plaintiff claimed he was denied access to by virtue of defendant's fraudulent conduct).

**33.** *See Mertens*, 508 U.S. at 255, 113 S.Ct. 2063 ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages-monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief.").

**34.** *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding that fiduciary could not be held personally liable to plan participant or beneficiary for extra-contractual compensatory or punitive damages).

**35.** 534 U.S. 204, 212, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (noting that "not all relief falling under the rubric of restitution is available in equity").

**36.** *Id.* at 213, 122 S.Ct. 708.

**37.** *See* Dan B. Dobbs, *Law of Remedies* § 4.3(5) at 608–14 (2d ed.1995).

**38.** *Great–West*, 534 U.S. at 214, 122 S.Ct. 708.

**39.** Dobbs, *supra*, note 18, § 4.1(1) at 552.

**40.** 516 U.S. at 509–10, 116 S.Ct. 1065 (distinguishing *Mertens* and *Russell's* prohibition on compensatory and punitive damages from the equitable relief sought by plaintiff).

**41.** *See e.g., Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust*, 134 F.Supp.2d 189, 195–96 (D.Mass.2001); *Jackson v.Truck Drivers' Union Local 42 Health & Welfare Fund*, 933 F.Supp. 1124, 1139 (D.Mass.1996).

sometimes the only way to eliminate the direct economic harm suffered by the plaintiff is through money.[42] In affirming that decision on other grounds, the First Circuit declined to directly address the issue, but acknowledged that determining what relief could be considered equitable is a difficult question.[43]

 Despite the window available for equitable relief in the form of money damages, the court cannot discern a way to craft this type of relief here without running afoul of existing precedent. Restitution is only available as an equitable remedy that can award money by way of a constructive trust or an equitable lien, doctrines that are inapplicable to the case at bar. Essentially, Plaintiff cannot show how Gillette was unjustly enriched by this transaction. Unlike other cases, Gillette extracted no direct benefit from giving the Plaintiff incorrect benefits estimates. The record gives no indication that Gillette's mistakes changed Plaintiff's employment decisions to Gillette's benefit—Plaintiff had been notified of his impending involuntary termination with Gillette before any of the misrepresentations took place. Plaintiff argues that he could have sought another job with Gillette if he had known that his benefits would be so small. This fact, though, does not mean that Gillette was unjustly enriched, as Gillette had no obligation to rehire Plaintiff. Nor did any

of the misrepresentations cause Plaintiff to lose payments actually scheduled to him under the plan. Gillette's errors were errors in estimation and reporting, not representations that unjustly enriched Defendants by depriving Plaintiff of specific funds to which he was entitled.

Case law from other circuits is consistent with this conclusion. In *Farr v. U.S. West Communications, Inc.*, the Ninth Circuit held that while an employer violated its ERISA duty of loyalty by providing incomplete and misleading information concerning the potential tax consequences of certain distributions, participants were not eligible for relief despite the breach.[44] The Sixth Circuit also reasoned that a plan participant whose account balance was rolled into a money market fund instead of his requested specified mutual fund could not obtain the difference between the two because the remedy sought by the participant constituted money damages, not restitution.[45]

One district court took a divided approach, refusing to award back due pension payments, but using an estoppel theory to issue an injunction requiring future pension payments to conform to the misrepresented estimates.[46] In that case though, the mis-estimates occurred throughout plaintiff's employment and en-

---

**42.** 141 F.Supp.2d 145, 151 (D.Mass.2001) (rejecting plaintiff's claim on other grounds, but finding that where plaintiff alleged defendant breached its duty by inducing plaintiff to accept a part-time position with reduced benefits, plaintiff did state a claim for equitable restitution of the benefits he would have had but for the breach).

**43.** *Watson*, 298 F.3d at 110 n. 8.

**44.** 151 F.3d 908, 916 (9th Cir.1998).

**45.** *See Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 481–483 (6th Cir.2001). *See also Glencoe v. Teachers Ins. & Annuity Ass'n*,

No. 99–2417, 2000 WL 1578478, **1–2, 2000 U.S.App. LEXIS 26046, at *4 (4th Cir. October 19, 2000) (finding that a ERISA action for restitution for amount of tax paid upon withdrawal of funds due to administrator's incorrect tax advice is really claim for extra-contractual damages).

**46.** *Pell v. E.I. Dupont De Nemours & Co.*, No. 02–21, 2006 WL 2864604, *13, 2006 U.S. Dist. LEXIS 73053, at *44 (D.Del. Oct. 6, 2006).

ticed him to continue work.[47] The court reasoned that the injunction was "appropriate because it prevents [employer] from gaining an advantage over [employee] through its repeated misrepresentations over a period of several years."[48] In this case, there is no way in which Defendant Gillette could be said to have gained such an advantage by mistakenly informing Plaintiff what he would receive upon his involuntary termination.

In short, even if Defendants had breached their duties, Plaintiff would not be entitled to any additional benefits. Because of this fact, any breach by the Defendants did not lead to unjust enrichment, and there is no route by which the Plaintiff could receive an equitable remedy leading to a monetary award.

Plaintiff asserts that he does not seek restitution, but rather "make-whole injunctive relief." No matter what it is called, Plaintiff seeks money damages to compensate him for his lost expectation and or reliance on Defendant Gillette's misrepresentations.[49] In the absence of unjust enrichment, or other equitable grounds for such damages, any injunctive relief would have the character and effect of compensating the Plaintiff rather than accomplishing the limited permissible purpose of restoring possession of unjustly appropriated funds.

Even if Gillette had breached a fiduciary duty, no remedy exists under ERISA in this case. This conclusion may seem harsh, but it is consistent with the ERISA policy of ensuring that benefits are paid consistently and predictably in accordance with a written plan.[50] Plaintiff's plan benefits remain protected. If Gillette's negligence prevented Plaintiff from getting the benefits he was entitled to under the plan, he could employ § 503(a)(1). If Defendants had misrepresented the terms of the plan to get Plaintiff to retire early, thereby enriching themselves, then Plaintiff could legitimately receive equitable relief.[51] In this case, while Plaintiff may have been harmed by his reliance on Brundige's inaccurate statements after he learned of his dismissal, he is receiving his proper amount due under the plan and has suffered no injury which can be remedied using equitable relief, as defined by controlling precedent.

## C. Estoppel

Plaintiff next claims that aside from the provisions of ERISA, this court should use its equitable powers to estop Defendants from paying him less than the full amount Brundige assured Plaintiff that he would receive. Defendants assert that equitable estoppel claims are not cognizable under ERISA, but this is not entirely correct. Under certain circumstances, some courts have recognized that estoppel may be used to create benefits that are not required by ERISA or the terms of the plan.[52]

47. *Id.* at 2006 WL 2864604, **2–5, 2006 U.S. Dist. LEXIS 73053, *7–14.

48. *Id.* at 2006 WL 2864604, *14, 2006 U.S. Dist. LEXIS 73053 *46.

49. *See Massey v. Stanley–Bostitch, Inc.,* 255 F.Supp.2d 7, 15 (D.R.I.2003) (rejecting a claim requesting recalculation of years of service as an impermissible request for money damages).

50. *See* 29 U.S.C. § 1101(a)(1); *Miller v. Coastal Corp.,* 978 F.2d 622, 625 (10th Cir.1992).

51. *See Varity,* 516 U.S. at 515, 116 S.Ct. 1065 (concluding that an equitable remedy could be paid to individual beneficiaries where they showed that the plan administrator had "through trickery, led them to withdraw from the plan and to forfeit their benefits").

52. *See Hooven v. Exxon Mobil Corp.,* 465 F.3d 566, 578 (3d Cir.2006) ("Moreover, any plaintiff who has relied on an inaccurate or misleading term of an SPD to his or her detriment can recover on a claim for breach of fiduciary duty, or, in 'extraordinary circum-

Our circuit has not decided whether a beneficiary may maintain an equitable estoppel claim under ERISA.[53] While some Circuits, like the Ninth, have concluded that such claims are not permitted under ERISA,[54] other courts have found that the federal common law of equitable estoppel may apply where a plan administrator orally informs a beneficiary of its interpretation of an ambiguous term under the plan.[55] Our circuit has reserved the question of whether such a right exists,[56] but made clear that an ERISA plan can not be *modified* by the doctrine of estoppel.[57]

The First Circuit had noted, though, that a narrow window for estoppel recovery might be possible where the representation relied upon reflected an *interpretation* of the plan about which reasonable persons could disagree.[58]

■ The First Circuit has made clear that for any potentially successful claim of equitable estoppel, a plaintiff would have to show that the company made "definite misrepresentations of fact" and believed

that the plaintiff would rely on them.[59] Second, the plaintiff must "rely reasonably on the misrepresentation" to his detriment.[60]

### 1. Definite Misrepresentations of Fact

While the First Circuit has established a special rule for liability based on misrepresentations in a formal Summary Plan Description ("SPD"), it has not specifically addressed claims based on informal alleged misrepresentations not in an SPD.[61] As mentioned above, some circuits have found that the federal common law of equitable estoppel may apply where a plan administrator orally informs a beneficiary of his interpretation of an ambiguous term.[62]

The plaintiff can not maintain such a claim for equitable estoppel, since the plan contains no ambiguity such that reasonable persons could disagree. It is not disputed that the controlling language of the plan explains that Plaintiff will only receive a benefit for his time at Gillette.[63] Plaintiff

stances,' an equitable estoppel claim under ERISA section 502(a)(3)(B)")(internal citations omitted); *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1286 (11th Cir.1990) (allowing an estoppel claim to go forward where plaintiff relied on an interpretation of a plan ambiguity, rather than a representation contrary to the terms of the plan).

53. See *City of Hope Nat'l Med. Ctr.,* 156 F.3d 223, 230 n. 9 (1st Cir.1998); Law, 956 F.2d at 370 n. 9 (1st Cir.1992).

54. See *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517 (9th Cir.1993).

55. See *Harrison v. Aetna Life Ins. Co.,* 925 F.Supp. 744, 747–48 (M.D.Fla.1996).

56. See *Mauser v. Raytheon Co. Pension Plan for Salaried Employees.,* 239 F.3d 51, 58 (1st Cir.2001) (citations omitted) (noting what the elements of estoppel would be in a case involving misrepresentations in a summary plan description, but "leave[ing] for an appropriate case whether there may exist an equitable

estoppel claim in cases where misrepresentations exist apart from the Plan Summary."); Law, 956 F.2d at 370 n. 9.

57. See *Law,* 956 F.2d at 369–70.

58. *Id.*

59. *Mauser,* 239 F.3d at 57.

60. *Id.*

61. *Id.* at 58.

62. See e.g., *Bowerman v. Wal–Mart Stores, Inc.,* 226 F.3d 574, 591–92 (7th Cir.2000) (applying estoppel to prevent a plan from denying claims which relied representations from company employees, who were purporting to explain an highly ambiguous plan); *Harrison v. Aetna Life Ins. Co.,* 925 F.Supp. 744, 747–748 (M.D.Fla., 1996).

63. The Gillette Company Retirement Plan, Def'ts' App., Paper # 31, Ex. 6, p. 11.

argues that he believed that Gillette, acting through Brundige, was using its general discretion under the plan, to interpret away this limitation and provide additional benefits for the recently terminated employees. Plaintiff notes that the Gillette Plan states that, "The Committee shall have such discretionary powers and authority as may be necessary or appropriate to discharge its duties hereunder, including but not limited to the following: to construe and interpret the Plan, decide all questions of eligibility, and determine the amount, manner and timing of payment of all benefits hereunder."[64] But the Plan also provides that "[t]he Committee shall have no power to add to, subtract from or modify any of the terms of the Plan or the Trust Agreement, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirement or rule of the Plan or the Trust Agreement."[65]

Plaintiff asks the court to find that the Gillette Human Resources Department, while improperly wearing the hat of plan administrator, had discretion to interpret the Plan, that Brundige's communications to Plaintiff were interpretations of ambiguous terms, and that Brundige's mis-computations constitute an actionable misrepresentation. Reaching such a conclusion would be clearly erroneous in light of established precedent explaining that estopppel can only be used to enforce interpretations of ambiguous language, and not to change the terms of the plan. The plan is not ambiguous, but rather clearly states Plaintiff's Parker Pen service will not count toward determining the amount of his benefit. Plaintiff argues that the Plan gives the Plan Administrator a general reservation of discretionary powers, including the right to compute the amount of benefits. Plaintiff argues that this reservation shows that Defendants had the power to make an interpretation awarding Plaintiff additional pension benefits. But a general reservation should not be read to render the entire plan ambiguous. Such a construction would make the entire plan unpredictable and make meaningless the courts' careful distinction between plan interpretation and plan alteration. Courts have been clear that an oral representation cannot modify a clear plan term,[66] and the inclusion of a general reservation of rights along with an otherwise clear plan should not change this result.

### 2. Reasonable Reliance

Where the First Circuit has recognized estoppel, it requires proof that the plaintiff reasonably relied on the misrepresentation to his detriment.[67] Reliance is often a question of facts and circumstances. But as a matter of law, a representation that forms the basis of an estoppel claim must have been made by someone having apparent authority to bind the plan.[68] While there is a genuine issue of material fact as to the extent Plaintiff actually relied on Brundige's misstatements in his subsequent employment decisions, the court finds as a matter of law that the statements made by Brundige and on the online pension calculator were not made by one with authority to interpret the plan. Plaintiff's estoppel claim, if it even exists in this circuit, would fail be-

---

64. *Id.* at 38.

65. *Id.* at 39.

66. *See Miller,* 978 F.2d at 625.

67. *See Mauser,* 239 F.3d. at 55 ("[R]elief is only appropriate if the participant demon-

strates significant or reasonable reliance on the Plan Summary.").

68. *See Cleary v. Graphic Commc'ns Int'l Union,* 841 F.2d 444, 447 (1st Cir.1988).

cause the misstatements made here were not interpretations of the plan made by those with the discretionary authority to interpret the plan.

**Conclusion**

Plaintiff's ERISA § 502(a)(3) claim fails because Defendants did not breach a fiduciary duty, and in the alternative, because Plaintiff's injury cannot be remedied with appropriate equitable relief, within the meaning of ERISA. The First Circuit has not decided whether an estoppel claim exists in circumstances like this, but it has created some definite restrictions on any right that may exist. Because the misrepresentations were not plan interpretations on which Plaintiff could have reasonably relied, Plaintiff would not have an estoppel claim. Accordingly, Defendants' *Motion for Summary Judgment* is ALLOWED.

AN ORDER HAS ISSUED.